O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH A. ETTER,<br><br>　　　　　Plaintiff,<br>　　v.<br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>　　　　　Defendant. | Case No. CV 10-582-OP<br><br>MEMORANDUM OPINION; ORDER |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

///
///
///

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 11.)

[2] As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

## I.
## **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") could rely upon the testimony of the vocational expert ("VE");

(2) Whether the ALJ properly considered the evidence of mental impairment; and

(3) Whether the ALJ properly considered Plaintiff's testimony.

(JS at 4.)

## II.
## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

/ / /

# III.
# DISCUSSION

**A.      The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of history of kidney cancer, treated, without recurrence; chronic kidney disease, stage 2, stable; history of bariatric surgery without complications; depression; and fibromyalgia. (Administrative Record ("AR") at 21.) The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk six hours in an eight-hour day; sit six hours in an eight-hour day, with appropriate breaks; occasionally stoop and bend; and climb stairs but cannot climb ladders, work at heights, or balance. (Id. at 24.) He noted Plaintiff should work in an air-conditioned environment and is limited to simple, repetitive tasks. (Id.)

Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff was unable to perform any of her past relevant work as a paralegal or office manager. (Id. at 32.) However, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform the requirements of such occupations as Cashier II (Dictionary of Occupational Titles ("DOT") No. 211.462-010), Office Helper (DOT No. 239.567-010), and Mail Clerk (DOT No. 209.687-026. (AR at 33.)

**B.      The ALJ's Reliance on the VE's Opinion Was Not Error.**

The ALJ synthesized the record for the benefit of the VE after hearing the testimony of Plaintiff, Samuel Landau, M.D., and a friend of Plaintiff. (Id. at 69.) The ALJ directed the VE to assume an individual with the same vocational profile as Plaintiff, with the physical and environmental limitations eventually found. (Id.) The VE testified that such a person could perform Plaintiff's past relevant work. (Id.) The ALJ then directed the VE to assume an individual also limited to

simple, repetitive tasks.  (Id.)  The VE testified that the additional limitation would eliminate the ability of Plaintiff to perform her past relevant work.  (Id.)  When asked if there existed other work in the national economy which such an individual could perform, the VE identified the occupations of Cashier II (DOT No. 211.462-010), Office Helper (DOT No. 239.567-010), and Mail Clerk (DOT No. 209.687-026).  (AR at 70.)  The VE expressly defined each of the three occupations as light and unskilled, with a specific vocational preparation of two.  (Id.)  In response to a hypothetical from Plaintiff's counsel adding that the hypothetical individual was also limited in her ability to respond appropriately to changes in the work setting (id. at 73), as clarified by the ALJ to mean that the individual requires a habituated setting in which to perform a simple, repetitive occupation (id. at 73-74), the VE testified that such an individual, limited to simple, repetitive tasks in a strictly habituated, object-oriented setting could still perform the job of Small Products Assembler II (DOT No. 739.687-030) (AR at 74).  The VE also testified that given the additional limitation, the positions of Cashier, Office Helper, and Mail Clerk would be eliminated because those were more "multi-tasking types of positions."  (Id.)

Plaintiff claims that of the three occupations the ALJ mentioned in his decision, two (Cashier II and Office Helper) are simple but not repetitive, and the other (Mail Clerk), is repetitive, but not simple.  (JS at 5, 7-9.)  In support, she notes that The Revised Handbook for Analyzing Jobs, Ch. 10 (Dept. of Labor 1991) ("RHAJ") defines and describes eleven temperaments required for work activity, including the temperament for repetitive work activity.  (Id. at 5.)  She contends that if the DOT description of the occupation does not include the temperament attribute of "repetitive" work activity, then by definition the occupation is not repetitive.  (Id.)  Neither Cashier II nor Office Helper contain that temperament.  (Id. Exs. 1, 2.)  As a result, Plaintiff contends that the VE improperly failed to explain her rationale for why the occupations identified would

4

be classified as simple or repetitive. (Id. at 5.)

The RHAJ defines repetitive work activity as:

> Performing **REPETITIVE** or Short Cycle Work involves performing <u>a few</u> routine and uninvolved tasks over and over again according to set procedures, sequence or pace with little opportunity for diversion or interruption. Interaction with people is included when it is routine, continual, or prescribed.

(Id. Ex. 4 (second emphasis added).)

### 1. The Occupations of Cashier II and Mail Clerk Are Incompatible With a Limitation to Simple, Repetitive Work.

The DOT provides that the positions of Cashier II and Mail Clerk both require a reasoning level of three. (Id. Exs. 1, 3.) A job's reasoning level "gauges the minimal ability a worker needs to complete the job's tasks themselves." Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005). Reasoning development is one of three divisions comprising the General Educational Development ("GED") Scale.[3] DOT App. C. The DOT indicates that there are six levels of reasoning development. Id. Level three provides that the claimant will be able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." (JS Exs. 1, 3.)

As it previously did in Pak v. Astrue, No. EDCV 08-714-OP, 2009 WL 2151361, at *7 (C.D. Cal. July 14, 2009), this Court again finds that the DOT's reasoning level three requirement conflicts with the ALJ's limitation herein that

---

[3] The GED scale "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study." DOT App. C.

Plaintiff could perform only simple, repetitive work. Meissl, 403 F. Supp. 2d at 984-85 (finding that reasoning level two does not conflict with the ALJ's prescribed limitation that plaintiff perform simple, routine tasks); see also Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (remand is appropriate where the ALJ failed to resolve a conflict between the VE's assessment that Plaintiff perform a job with a reasoning level of three and the ALJ's finding that Plaintiff was limited to "simple and routine work tasks."); Carter v. Barnhart, No. 05-38-B-W, 2005 WL 3263936 (D. Me. 2005)[4] (finding remand warranted because the ALJ's limitation to simple, repetitive tasks and the DOT's reasoning level of three at least required the ALJ to question the VE about the discrepancy).

     Several other courts in this circuit, in addition to this Court in Pak, have also questioned whether a claimant limited to simple, repetitive tasks, is capable of performing jobs requiring level three reasoning under the DOT. For instance, in McGensy v. Astrue, No. EDCV 09-152 AGR, 2010 WL 1875810 (C.D. Cal. May 11, 2010), the Court noted that while case law has held that "a limitation to 'simple, repetitive tasks' is consistent with level two reasoning," this restriction is "inconsistent" with the requirements for level three reasoning, in particular the job of Mail Clerk. Id. at *3 (citing Pak, 2009 WL 2151361, at *7); Tudino v. Barnhart, No. 06-CV-2487-BEN (JMA), 2008 WL 4161443, at *11 (S.D. Cal. Sept. 5, 2008) ("[l]evel-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks"; remand to ALJ to "address the conflict between Plaintiff's limitation to 'simple, repetitive tasks' and the level-three reasoning"); Squier v. Astrue, No. EDCV 06-1324-RC, 2008 WL 2537129, at *5 (C.D. Cal. June 24, 2008) (reasoning level three is "inconsistent with a limitation to simple repetitive work"). As in McGensy, in Bagshaw v. Astrue, No. EDCV 09-1365-CT, 2010 WL 256544, at * 5 (C.D. Cal. Jan. 20,

---

    [4] An unpublished case may be cited for its persuasive value pursuant to Ninth Circuit Rule 36-3.

2010), the court expressly cited Hackett in concluding that the occupation of Mail Clerk, which requires level-three reasoning under the DOT, was "inconsistent with [the plaintiff's] intellectual functional capacity limitation to simple, routine work."

In light of the weight of authority in this circuit, this Court again concludes that the given the ALJ's limitation to simple, repetitive tasks, Plaintiff is not capable of performing the work as a Cashier II or Mail Clerk, which requires level-three reasoning. Although the ALJ may accept VE opinion testimony that is in conflict with the DOT, the record must contain "persuasive evidence to support the deviation" and he must "obtain [from the VE] a reasonable explanation for any apparent conflict." See Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001); Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007). Here, although the VE testified that her testimony was consistent with the DOT, there is no evidence to support the deviation. Thus, the ALJ could not rely on the VE's opinion without seeking an explanation of the apparent inconsistency between her opinion that Plaintiff could perform these jobs given the limitation to simple, repetitive tasks, and the standards contained in the DOT.

### 2. The Occupation of Office Helper Is Compatible with a Limitation to Simple, Repetitive Work.

The DOT provides that the position of Office Helper requires a reasoning level of two. (JS Ex. 2.) Level two provides that the claimant will be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." (Id.) As noted above, this Court, and numerous others in this circuit, have previously found that a reasoning level of two is consistent with a limitation to simple, repetitive work.

Moreover, although the DOT does not specifically describe this occupation as having a repetitive temperament, this Court notes that numerous decisions in this circuit have specifically found the position of Office Helper to satisfy the

limitation of simple, repetitive work. See, e.g., Chavez v. Astrue, No. EDCV 08-1431-RC, 699 F. Supp. 2d 1125, 1136 (C.D. Cal. 2009) (house cleaner with reasoning level one and office helper with reasoning level two, both consistent with a limitation to simple, repetitive tasks) (citing Lara v. Astrue, 305 Fed. Appx. 324, 326 (9th Cir. 2008) ("Reasoning Level 1 jobs are elementary, exemplified by such tasks as counting cows coming off a truck, and someone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication-in other words, Reasoning Level 2 jobs."); Torlucci v. Astrue, No. EDCV 09-1126 SS, 2010 WL 1407297, at *8 (C.D. Cal. Apr. 7, 2010) (reasoning required to perform simple, repetitive tasks contemplated by reasoning level two; ALJ properly determined plaintiff could perform job of Office Helper); Racette v. Astrue, No. 1:08-cv-01645 GSA, 2010 WL 1286786 (E.D. Cal. Mar. 29, 2010) (Office Helper position, at reasoning level two, is not in conflict with ALJ's limitation to simple, repetitive tasks). This Court also finds the Office Helper position compatible with a limitation to simple, repetitive tasks.[5]

Accordingly, even if both the Cashier II and Mail Clerk jobs are excluded from the analysis, this has no consequence on the ultimate outcome of the case because significant numbers of positions as Office Helper exist in the local and national economies (see AR at 70),[6] and any error, therefore, would be harmless.

---

[5] This conclusion is reinforced by the DOT's description of the position to include such tasks as furnishing workers with clerical supplies; delivering oral or written messages; collecting and distributing paperwork from one department to another; and marking, tabulating, and filing articles and records. As the VE noted, the Office Helper may perform several different types of tasks; it is clear, however, that the tasks described qualify as both simple and repetitive.

[6] As noted in Meissl, the Social Security Act provides that an individual is disabled where her impairment prevents her from engaging in "'any other kind of substantial gainful work which exists in the national economy,'" meaning jobs

(continued...)

Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability).

Accordingly, the Court finds that the ALJ sustained his burden of proving there is work in the economy that Plaintiff can perform. Because there is at least one position testified to by the VE and relied on by the ALJ that satisfies the limitations found, there was no error.[7]

**C.    The ALJ Properly Considered the Evidence of Mental Impairment.**

Plaintiff claims that the ALJ failed to give proper weight to the reports of Dr. Loomis, the non-examining state agency physician; Kathy Vandenburgh, Ph.D., consultative examiner; and Linda Hardin, Licensed Clinical Social Worker ("LCSW"), regarding Plaintiff's mental impairment.

**1.    Dr. Loomis.**

In his opinion, Dr. Loomis stated that Plaintiff is "capable of understanding,

---

[6](...continued)
"'which exist[] in significant numbers' in the area where the claimant lives." Meissl, 403 F. Supp. 2d at 982 n.1 (quoting 42 U.S.C. § 423(d)(2)(A)). The focus of the statute, therefore, is on the number of jobs available, not the number of occupations. Id. Here, the VE testified that there are 1,500 Office Helper positions regionally, and 25,000 positions nationally. (AR at 70.) This clearly constitutes a significant number. See Barker v. Sec'y of Health & Human Servs., 882 F. 2d 1474, 1479 (9th Cir. 1989) (availability of 1,266 jobs regionally held to be a significant number).

[7] Respondent also notes that the VE identified the occupation of Small Products Assembler II in response to a hypothetical limiting Plaintiff to "simple repetitive tasks in a strictly habituated, object-oriented setting." (JS at 11 (citing AR at 74).) The VE described the job as light and unskilled, and the DOT gives it a reasoning level of two. (Id. Ex. 6.) This position also specifically contains the temperament for repetitive work. (Id.) While the ALJ did not expressly cite this occupation as one of the example occupations in his decision, the testimony further supports the ALJ's ultimate conclusion that Plaintiff can perform a significant number of light-level jobs in the national economy.

1 remembering and carrying out simple one to two step tasks." (AR at 542.)
2 Plaintiff claims that because the ALJ gave great weight to Dr. Loomis' opinions,
3 he erred when he "transmuted" Dr. Loomis' stated limitation to "simple one to two
4 step tasks," into a finding that Plaintiff could perform simple, repetitive tasks. (JS
5 at 14.) The Court disagrees.

6       Preliminarily, the ALJ took into account the substantial evidence of record
7 when he found that Plaintiff's severe impairments, including her depression,
8 restricted her to simple, repetitive tasks. Moreover, Plaintiff misstates Dr.
9 Loomis' assessment concerning Plaintiff's abilities and limitations. Dr. Loomis
10 merely stated that Plaintiff is "capable of understanding, remembering and
11 carrying out simple one to two step tasks" (AR at 542), not that Plaintiff is
12 necessarily <u>limited</u> to tasks involving only one and two steps. Dr. Loomis also
13 specifically opined that Plaintiff is "capable of simple tasks," and is able to
14 "maintain concentration, persistence and pace throughout a normal
15 workday/workweek as related to simple tasks." (<u>Id.</u>) He also noted she is able to
16 interact adequately with coworkers and supervisors, and without difficulty dealing
17 with the demands of general public contact. (<u>Id.</u>) In short, Plaintiff misconstrues
18 Dr. Loomis' notation as to her ability to follow one and two step instructions as an
19 imposition of a limitation. However, a review of his opinion does not support this
20 argument. Moreover, Dr. Loomis' overall opinion is consistent with the ALJ's
21 limitation to simple, repetitive tasks.

22       **2.**    **<u>Dr. Vandenburgh.</u>**

23       The ALJ gave great weight to Dr. Vandenburgh's August 2008 report. (<u>Id.</u>
24 at 30.) Dr. Vandenburgh opined that Plaintiff had no limitations on interacting
25 socially with others, understanding instructions, and completing simple and
26 detailed tasks, although she "may have difficulty sustaining the task for an
27 extended period of time due to fatigue." (<u>Id.</u> at 548.) She also found that
28 Plaintiff's ability to complete complex tasks was moderately limited due to fatigue

and depression. (Id.) She found slight limitations on Plaintiff's ability to sustain an ordinary routine without sustained supervision, and on her ability to concentrate for at least two hour increments. (Id.) Her opinion alone constitutes substantial evidence because it was based on independent clinical findings. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

Plaintiff contends that Dr. Vandenburgh's opinions and conclusions regarding the level of work Plaintiff could perform should have been disregarded by the ALJ because Dr. Vandenburgh failed to conduct the "preferred" test for assessing concentration, persistence or pace – serial 3s and 7s. (JS at 14-15.) To evaluate Plaintiff's memory, attention and concentration, Dr. Vandenburgh apparently asked Plaintiff to recall five digits forward and three digits backwards, to spell the word "world" backwards, to immediately recall three objects, and to recall three objects after three minutes. (AR at 546.) These tasks were successfully completed, although Dr. Vandenburgh reported that Plaintiff could recall only one of three objects after three minutes. (Id.)

Contrary to Plaintiff's conclusory statement that the regulations provide that serial 3s and 7s are the "preferred" method for assessing this attribute, in fact they merely state that this attribute is "assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100." 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00(C)(3) (emphasis added). The regulations further state that "[i]n psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits." (Id.) Dr. Vandenburgh evaluated Plaintiff's concentration using psychological tests of intelligence and memory. (AR at 544 (indicating use of the Wechsler Adult Intelligence Scale-III and the Wechsler Memory-III).) Because there is no requirement that an evaluator use serial 3s or 7s when assessing concentration, persistence or pace, it was not error for the ALJ to give great weight to Dr. Vandenburgh's opinion.

### 3. **LCSW Hardin.**

With regard to the records of LCSW Hardin, Plaintiff argues that the ALJ erred (1) when he discounted those records for (a) not covering a twelve-month period, and (b) for being "fill in the blank," and (2) because he failed to enumerate factors regarding why he disregarded the opinions of this non-accepted medical source pursuant to Social Security Ruling ("SSR") 06-03p.[8] (JS at 15-16.) She also claims that LCSW Hardin's findings of depression are supported by Plaintiff's oncologist's notes diagnosing depression, and Plaintiff's rheumatologist's notes indicating "management of depression." (Id. at 16-17 (citing AR at 322, 374, 525, 532).)

According to SSR 06-3p, an ALJ must also consider the opinions of medical sources who are not, according to the regulations, an "acceptable medical source," such as social workers and therapists, by weighing a set of factors, including their professional qualifications, how consistent their opinions are with the other evidence, the amount of evidence provided in support of their opinions, whether the other source opinion is well-explained, and whether the other source "has a specialty or area of expertise related to the individual's impairment." SSR 06-03p. Although an ALJ may give an acceptable medical source's opinion more weight than opinions from other sources (see, e.g., 20 C.F.R. §§ 404.1527, 416.927; Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996)), the ALJ may not completely disregard opinions from "other sources" such as social workers just because they are not "acceptable medical sources." See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (an ALJ is required to "consider observations by

---

[8] Social Security Rulings are issued to clarify the Regulations and policy. They are not published in the federal register and do not have the force of law. However, under the case law, deference is to be given to the Commissioner's interpretation of the Regulations. Ukolov v. Barnhart, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005); Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).

non-[acceptable] medical sources as to how an impairment affects a claimant's ability to work"). Rather, to properly reject a social worker's opinion, the ALJ must provide "reasons germane to each [social worker] for doing so." Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)).

     LCSW Hardin found Plaintiff to be "markedly limited" in a number of areas and concluded that Plaintiff was found to be incapable of performing even low-stress jobs because "she can't predict how she would feel from one day to the next." (AR at 608-11.) The ALJ gave "little evidentiary weight" to LCSW Hardin's conclusions because her report primarily summarized Plaintiff's subjective complaints and diagnoses but did not present any objective clinical or laboratory diagnostic findings to support her conclusions; the form used was a "fill-in-the-blank" form with only marginal notes; and LCSW Hardin specifically stated that she "could not make a determination or give a medical opinion on whether [Plaintiff's] condition would exceed 12 months in duration." (Id. at 31-32 (citing id. at 743).) Plaintiff disagrees, noting that LCSW Hardin provided detail in various notes. (JS at 17 (citing AR at 533-39).) She also contends the ALJ failed to "use the factors enumerated by the binding ruling." (Id. at 16.) However, the ALJ's reasons, and a review of the record in support of those reasons, directly implicate at least three of the factors laid out in SSR 06-03p, i.e., whether the source presented relevant evidence to support her opinion, how consistent the other source opinion is with other evidence, and other factors that tend to support or refute the opinion. As noted in the ruling itself:

     Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an acceptable medical source depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of

all the evidence in that particular case.

SSR 06-03p.

Here, the ALJ's analysis is consistent with SSR 06-03p, as he effectively considered those factors which he found relevant to resolving the question of LCSW Hardin's testimony. See, e.g., Tonapetyan, 242 F.3d at 1149 (opinions based on claimant's unreliable self-report are properly rejected); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999) (an opinion of disability may be rejected if it is premised to a large extent on the claimant's own account of his symptoms and limitations and may be disregarded where those complaints have been properly discounted); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (ALJ not obliged to accept opinions that are conclusory, unexplained, and unsupported by clinical findings); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (an ALJ may reject check-off forms that do not contain explanation of the bases of their conclusions). Moreover, to the extent Plaintiff contends the ALJ disregarded LCSW Hardin's findings of depression, which were supported by the notes of her oncologist, rheumatologist, and other medical records (JS at 16-17), the Court disagrees, as the ALJ specifically found that Plaintiff had the severe limitation of depression, among other impairments.

Based on the foregoing, Plaintiff's argument that the ALJ improperly rejected her mental impairment is without merit.

**D.      The ALJ Properly Considered Plaintiff's Testimony.**

In her written submissions in support of her application, Plaintiff complained about her poor memory and severe pain. (AR at 134.) She stated she could hardly lift a cup, suffered from depression and was weepy, possessed no energy, sometimes could not walk, could not stand very long, had to fidget while sitting, could barely move her hands, and suffered with migraine headaches. (Id.) She stated she hurts so badly that she can hardly move. (Id.) After struggling through a long commute for three months, Plaintiff stopped working. (Id.) At the

hearing, Plaintiff testified she has a limited ability to write because of hand pain (id. at 39); when shopping she uses the cart as a walker (id. at 50); she experiences constant neck pain and hand numbness (id. at 51-52); her carpal tunnel causes her to drop cups and plates (id. at 52); she cooks about three times per week (id. at 60); she relies on her brother for housework but does her own laundry and grocery shopping (id. at 61); and during long church services, she has to frequently switch positions (id. at 62).

With regard to Plaintiff's credibility, the ALJ stated, in part, as follows:

> [T]he record shows that the claimant's treatment has been conservative in nature since her kidney surgery in 2004 and not the type one would expect from a disabling condition; the record does not contain evidence that the claimant's medications caused adverse side effects that would preclude sustained work activity; and the record of multiple examinations and diagnostic studies does not provide abnormal findings to support her alleged disabling condition. Moreover, she describes an active life style that includes an ability to care for her 80 year old father, attend to her flowers and garden, handle most of her personal care and hygiene needs, prepare daily meals, do laundry, dust, read, do crossword puzzles, watch television, use a computer, go grocery shopping or to the pharmacy, attend church every week, and handle her personal finances. The evidence is inconsistent with limitations that would preclude sustained work activity, and is consistent with an ability to do the full range of light work capacity.

(Id. at 27-28 (citation omitted).) The ALJ also noted that the objective medical evidence shows that Plaintiff's medications have been effective in controlling her symptoms, and that her analgesic medication history was inconsistent with her claimed severity of pain, as she had "never been maintained on a regular prescription of strong analgesics such as morphine, pethadone, Fentanyl or

Oxycontin."  (Id. at 28.)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnel, 947 F.2d at 343.

To determine whether a claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms.  Thomas, 278 F.3d at 958-59; see also Smolen, 80 F.3d at 1284.

Plaintiff contends the ALJ failed to provide clear and convincing reasons

for rejecting Plaintiff's pain and limitation testimony. (JS at 23-24.) Specifically, she contends that the ALJ's finding that the evidence of record did not confirm an inability to work "ignores the opinions of Linda Hardin." (Id. at 25.) The Court has already found that the ALJ properly discounted LCSW Hardin's opinion and, therefore, finds this argument without merit.

Plaintiff also contends that the fact that she never took strong analgesics such as morphine, methadone, Fentanyl, or Oxycontin, is not a prerequisite to the finding of disability. (Id. at 26.) With this proposition, the Court agrees; moreover, as also noted by the ALJ, Plaintiff received appropriate treatment for her conditions. (AR at 28.) Accordingly, this reason given by the ALJ was not convincing.

Plaintiff also argues that the ALJ's finding that Plaintiff lives an active lifestyle is belied by the record. (JS at 25 (citing AR at 146, 147.) Plaintiff also argues that her concessions about her minimal activities do not undermine the proposition that she lacks the ability to sustain full-time work activity. (Id. at 26.) For the reasons suggested by Plaintiff (id.), the Court finds that the ALJ did not properly rely on Plaintiff's daily activities to support his credibility finding, i.e., the reasons given were not convincing.

However, the ALJ provided additional reasons for finding Plaintiff not fully credible, which were clear and convincing, and his reasons are supported by substantial evidence. For instance, he found that the records demonstrated that Plaintiff's condition was adequately alleviated and managed with treatment. (AR at 28.) See, e.g., Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication are not disabling); Crane, 76 F.3d at 254 (ALJ properly considered claimant's good response to treatment). The ALJ noted that Plaintiff's depression was stable on her medication regimen, and that even LCSW Hardin reported improvement and a partial remission of Plaintiff's depression. (AR at 22, 28 (citing id. at 633, 742).)

Indeed, in January 2008 Plaintiff's depression was reportedly "well managed currently." (Id. at 525). The ALJ also noted that as of January 16, 2008, Plaintiff's fibromyalgia pain was better and she had responded well to Neurontin, her pain having been reduced by 50 percent. (Id. at 28.) On July 8, 2008, the doctor reported that there was room for continued improvement, increased her Neurontin dose, and advised her to return in six months. (Id. (citing id. at 525, 526, 527).)

The ALJ also relied on the testimony of Samuel Landau, M.D., who reviewed the record, assessed Plaintiff's condition, and determined that she was able to perform light-level work. (Id. at 29, 32 (citing id. at 42-46, 47, 49).) He relied on the report of consultative examining physician Sean To, M.D., who evaluated Plaintiff in February 2008 and opined that she could perform medium-level work. (Id. at 29-30 (citing id. at 441-45).) Also, as previously discussed, the ALJ relied on Dr. Vandenburgh's opinion that Plaintiff did not have limitations that would preclude simple, repetitive work. (Id. at 30 (citing id. at 548).) These opinions, together with the ALJ's finding regarding Plaintiff's effective pain management, constitute clear and convincing evidence to discount Plaintiff's credibility. Light v. Comm'r of Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (testimony from physicians about the nature, severity and effect of claimant's symptoms may be used to find claimant lacks credibility); Bunnell, 947 F.2d at 341, 345 (lack of corroborating objective evidence may be one factor in credibility, as long as it is not the only factor). Although Plaintiff complains that the ALJ "made no attempt to consider" Plaintiff's testimony "in conjunction with the medical evidence confirming severe impairments or the concessions for the presence of limitation by Dr. Landau limiting her to light exertion" (JS at 26), the ALJ ultimately did limit Plaintiff to light work, with limitations.

Even if the ALJ improperly relied on Plaintiff's daily activities to support his credibility finding, because other clear and convincing reasons supported his

finding, any error was harmless.

## IV.
## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated:  October 22, 2010

HONORABLE OSWALD PARADA
United States Magistrate Judge